**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x

JAYSON TORRES,

        *Plaintiff*,

        *v*.

EL BARRIO'S OPERATION FIGHTBACK, INC.,

        *Defendant*.

------------------------------------------------------------------------x

**16 CV**

**COMPLAINT**

Plaintiff Jayson Torres, by his counsel, The Harman Firm, LLP, alleges for his Complaint against Defendant El Barrio's Operation Fightback, Inc., as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff Jayson Torres ("Plaintiff" or "Mr. Torres") seeks damages and costs against Defendant El Barrio's Operation Fightback, Inc. ("Defendant" or "El Barrio") for discriminating against Mr. Torres based on his race (Hispanic), national origin (Puerto Rican), and disability (Posttraumatic Stress Disorder ("PTSD")) by subjecting him to a hostile work environment based on these protected characteristics and retaliating against him by, among other things, terminating his employment. Defendant's conduct violates Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981, and the New York City Human Rights Law ("NYCHRL"), N.Y. Admin. Code §§ 8-101 to 14-151.

2. In addition, Defendant failed to pay Plaintiff for all hours worked and failed to pay Plaintiff at the overtime premium rate for hours worked in excess of forty (40) in a workweek, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 – 219, and New York State Labor Law ("NYLL").

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's claims, as Defendant violated Plaintiff's rights under Section 1981 and the FLSA.

4. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's claims brought under NYCHRL and the NYLL, as the federal claims arise from the same set of operative facts as the state and local claims and form part of the same case or controversy.

5. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

## TRIAL BY JURY

6. Plaintiff respectfully requests a trial before a jury.

## PARTIES

7. Plaintiff Jayson Torres, at all times relevant hereto, was and is a resident of New York County in the State of New York.

8. Upon information and belief, at all times relevant hereto, Defendant El Barrio was and is a corporation organized under the laws of the State of New York with its principal place of business located at at 413 East 120th Street, New York, New York 10035.

## STATEMENT OF FACTS

9. Plaintiff brings discrimination, retaliation and wage and hour claims against Defendant.

2

**I.    Discrimination and Retaliation Claims**

10.    On November 27, 2014, Mr. Torres was hired as a porter for El Barrio at P.S. 109, a public school turned residential building called the "Art Space."

11.    Mr. Torres was responsible for maintaining the property, which included cleaning the building, removing garbage, and generally being available to tenants.

12.    Immediately upon Ms. Torres's hire, the superintendent of the building, Demi Minaj (white, of Albanian descent), targeted Mr. Torres based on his race and national origin.

13.    Mr. Minaj made insulting jokes about Mr. Torres's race and national origin.

14.    For example, Mr. Minaj insulted Mr. Torres by asking, "How many Puerto Ricans do we need to fix the garbage machine?" and saying, "Just like a Puerto Rican," if Mr. Torres made a mistake.

15.    Mr. Minaj arbitrarily disciplined Mr. Torres.  For example, Mr. Minak wrote up Mr. Torres for sitting down during his unpaid lunch hour.

16.    Mr. Torres complained about Mr. Minaj's discriminatory comments to El Barrio's Property Manager, Rolinda Ramos.

17.    Ms. Ramos told Mr. Torres she would not "do anything" with respect to Mr. Torres's complaints because the company "holds hands," meaning El Barrio would unconditionally support Mr. Minaj.

18.    In February 2015, at a staff party, El Barrio's handyman, Danny Rodriguez, showed Mr. Torres a picture of himself holding a rifle in front of an Albanian flag.

19. Mr. Torres shared with Mr. Rodriguez his dislike for guns, revealing that he suffers from PTSD after having been shot in a mugging several years prior.

20. From that moment on, Mr. Rodriguez severely harassed Mr. Torres based on his PTSD.

21. For example, Mr. Rodriguez frequently placed party poppers and small fireworks in the pushcarts, which made gunshot sounds when Mr. Torres was about to use them, triggering his condition.

22. Mr. Rodriguez emailed Mr. Torres videos of explosions and other explicit violence.

23. Mr. Rodriguez also rigged doors in the building with objects so that the objects swung, hit, and surprised Mr. Torres.

24. Mr. Torres complained to Mr. Minaj, who laughed at Mr. Torres and did nothing to stop the harassment.

25. In March 2015, Mr. Minaj called Mr. Torres in for a meeting to ask whether Mr. Torres was 100 percent Puerto Rican, to which Mr. Torres responded that he was.

26. Mr. Minaj then insulted Mr. Torres, stating, "We are going to make you work, help you get rid of the lazy Puerto Rican in you."

27. Mr. Minaj made offensive statements about how his Albanian culture was superior to Puerto Rican culture, boasting: "As a people, Puerto Ricans don't take care of their land, women, children or family. That's why their women go to Albanians – we're hard workers."

28. El Barrio's refusal to correct Mr. Minaj's discriminatory behavior further emboldened Mr. Minaj.

29. For example, on September 27, 2015, Mr. Torres witnessed Mr. Minaj arguing with a resident over missing beers.

30. The resident told Mr. Minaj that beer bought for a party was missing.

31. Mr. Minaj directed Mr. Torres to look through the garbage cans in the building to find them.

32. After hours of searching, Mr. Minaj told Mr. Torres that he knew where the beers were.

33. Mr. Minaj had hidden the beers to drink later himself; he had Mr. Torres look through garbage for non-existent beer to punish him for his prior complaints of discrimination.

34. Mr. Torres told Mr. Minaj he was going to report Mr. Minaj's conduct, to which Mr. Minaj responded, "So now you become a woman? There is no one in the office you can complain to."

35. Mr. Minaj repeated this phrase each subsequent time he harassed Mr. Torres to discourage him from complaining.

36. Nonetheless, Mr. Torres immediately complained to Ms. Ramos, who ordered a meeting between Mr. Minaj and Mr. Torres.

37. During the meeting, Mr. Ramos stepped outside of her office, at which time Mr. Minaj bragged of the protection he was ensured from El Barrio, stating, "I'll be here long after you're gone," and "It will be your words against mine."

38.     Mr. Minaj denied taking the beers to Ms. Ramos.  Again, El Barrio did not do anything to address Mr. Torres's complaints.

39.     Later that day, Mr. Minaj retaliated against Mr. Torres for his complaints by, among other things, disabling the garbage compactor and forcing Mr. Torres to remove garbage by hand.

40.     Mr. Torres again complained to El Barrio, but his complaints were ignored.  Mr. Rodriguez then joined the retaliation by putting garbage in Mr. Torres's coat pockets.

41.     Shortly after, Mr. Torres began developing a rash as a result of handling garbage through the compactor.

42.     Mr. Torres was not relieved of this task until management saw his rashes and sent him home because his rashes were "not good for the building's image."

43.     In October 2015, Mr. Torres told the Director of Leasing and Assistant Manager, Eric Toro, about the discrimination and harassment he was enduring.  Instead of acknowledging Mr. Torres's many complaints, Mr. Toro issued Mr. Torres a write-up for lateness and warned against using the word "thief" in reference to Mr. Minaj's knowingly taking the resident's beer.

44.     In retaliation for his complaints, in November 2015, Mr. Rodriguez and Mr. Minaj harassed Mr. Torres, sabotaging his work by trashing a bathroom Mr. Torres had just cleaned.

45.     Mr. Rodriguez then reprimanded Mr. Torres for not cleaning the bathroom.

46.     Mr. Torres again complained to Mr. Minaj about the harassment.

47.     Mocking Mr. Torres, Mr. Minaj asked Mr. Rodriguez if Mr. Torres's allegations were true.  Mr. Rodriguez laughed and said, "He's just not cleaning it right."

48. In December 2015, tenants gave Mr. Torres cash gifts for the holidays in recognition of his hard work all year.

49. Mr. Minaj pulled Mr. Torres aside and asked him how much money he received. Mr. Torres responded that he was not comfortable answering that question, to which Mr. Minaj responded, "That's why Puerto Ricans don't have any money."

50. After realizing that Mr. Torres was offended, Mr. Minaj mocked him, stating, "Now you're going to run to the office again? Where did that get you last time?"

51. On January 28, 2016, Mr. Torres requested a transfer to another building due to the non-stop harassment and discrimination.

52. The next day, on January 29, 2016, Mr. Minaj told him, "Today is going to be a good day."

53. Later that day, Ms. Ramos called Mr. Torres into her office and told him the following: El Barrio had denied his transfer, and he would have a new work schedule from 7 p.m. to midnight, reducing his hours and preventing him from spending time with his children.

54. Mr. Torres objected to the new schedule.

55. Ms. Ramos then suggested that Mr. Torres agree to be terminated, telling him that he deserved more and that El Barrio would not challenge or deny an application for unemployment insurance benefits. Mr. Torres agreed.

56. On or about February 1, 2016, Mr. Torres was shocked to be reprimanded by Ms. Ramos for not appearing at work the previous day.

57. Mr. Torres was confused, reminding her that she had fired him earlier that week. Ms. Ramos denied ever having that conversation with him, but demanded that Mr. Torres pick up his termination letter.

58. On or about February 2, 2016, Mr. Torres picked up his termination letter, which stated that El Barrio was terminating him for excessive lateness.

59. Mr. Torres was never warned of any problems regarding alleged lateness, much less informed that his job was in jeopardy.

60. In further retaliation, Mr. Rodriguez sent a text to a tenant in the Art Space, falsely informing him that if Mr. Torres set foot on El Barrio's premises, he would be arrested.

61. The tenant, a friend of Mr. Torres's wife, immediately contacted her, believing that Mr. Torres had been arrested. Mr. Torres's wife was at the hospital receiving medical treatment at the time, and the text deeply upset her.

62. El Barrio further retaliated against Mr. Torres after his termination by providing false information to the Department of Labor ("DOL") concerning Mr. Torres's request for unemployment benefits.

63. El Barrio represened to the DOL that on January 29, it warned Mr. Torres that if he were absent again, he would be terminated.

64. No such conversation ever took place.

## II.    Wage and Hour Claims

65. During his employment with El Barrio, Mr. Torres was paid a wage of $13.25 an hour, working from 6 a.m. to 2 p.m. with a one (1) hour lunch break Monday through Friday, totaling thirty-five (35) hours per week.

66. Mr. Minaj, however, regularly directed Mr. Torres to perform work for El Barrio off the clock.

67. Every Monday, Mr. Torres was required to work an additional shift, working from 5 p.m. to 7 p.m. after his regular day shift.

68. Additionally, El Barrio often directed Mr. Torres to start work at 5 a.m., but did not compensate him for the extra hour of work.

69. El Barrio only paid Mr. Torres for thirty-five (35) hours, failing to pay him at all for additional time worked and failing to pay him at the overtime premium rate for hours worked in excess of forty (40) hours per week.

70. Mr. Torres is entitled to be paid for every hour worked and at the overtime premium rate for those hours worked in excess of forty (40) hours per week.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Hostile Work Environment Based on Race in Violation of Section 1981**

71. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 70 with the same force as though separately alleged herein.

72. Section 1981 prohibits employers from discriminating against an employee in compensation, terms, conditions or privileges of employment on the basis of race.

73. Defendant discriminated against Plaintiff by subjecting him to offensive, racially motivated comments that were so severe and pervasive that they altered the terms, conditions, or privileges of his employment.

74. As a direct and proximate consequence of Defendant's race discrimination, Plaintiff has suffered, and continues to suffer, substantial economic damages, including, but not limited to, back pay and front pay, as well as emotional distress and suffering.

9

75. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's federally protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## SECOND CAUSE OF ACTION
### Retaliation in Violation of Section 1981

76. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 75 with the same force as though separately alleged herein.

77. Section 1981 prohibits employers from retaliating against any employee for making a complaint of racial discrimination.

78. Plaintiff properly complained to Defendant about racial discriminators' comments and conduct.

79. Defendant retaliated against Plaintiff by, *inter alia*, subjecting him to further offensive, racially motivated harassment, refusing to reprimand the discriminatory behavior, and ultimately terminating him.

80. As a direct and proximate consequence of Defendant's retaliation, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including, but not limited to, back pay and front pay, as well as emotional distress and suffering, all in amounts to be determined at trial.

81. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's federally protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## THIRD CAUSE OF ACTION
### Hostile Work Environment Based on Race, National Origin, and Disability in Violation of the NYCHRL

82. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 81 with the same force as though separately alleged herein.

83. The NYCHRL prohibits employers from discriminating against an employee in compensation, terms, conditions or privileges of employment on the basis of race, national origin, and disability.

84. Defendant discriminated against Plaintiff by subjecting him to offensive, discriminatory comments, harassment, and unsafe working conditions.

85. Plaintiff properly complained to Defendant about the discriminators' comments and conduct.

86. As a direct and proximate consequence of Defendant's discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering.

87. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## FOURTH CAUSE OF ACTION
### Retaliation in Violation of the NYCHRL

88. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 87 with the same force as though separately alleged herein.

89. NYCHRL prohibits retaliation by an employer against an employee for complaining of discriminatory practices illegal within the NYCHRL.

90. Plaintiff properly complained to Defendant about illegal discriminatory comments and conduct.

91. Defendant retaliated against Plaintiff by, *inter alia*, subjecting him to further offensive, discriminatory comments, refusing to reprimand discriminatory behavior, and ultimately terminating him.

92. As a direct and proximate consequence of Defendant's retaliation, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering.

93. Defendant's retaliation toward Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

**FIFTH CAUSE OF ACTION**
**Unpaid Wages and Overtime in Violation of the FLSA**

94. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 93 with the same force as though separately alleged herein.

95. At all relevant times, Plaintiff was an "employee" and Defendant was an "employer," as contemplated under the FLSA.

96. FLSA mandates that employers must compensate employees for all hours worked and at one-and-a-half (1.5) times their normal hourly rate for all hours worked over forty (40) hours each week.

97. Defendant willfully violated the FLSA overtime requirement by not paying Plaintiff for all hours worked and at the overtime premium rate for any overtime worked.

98. As a result of Defendant's unlawful acts, Plaintiff has been deprived of wages and overtime compensation in an amount to be determined at trial, and is entitled to recovery of liquidated damages, interest, attorneys' fees, costs, and disbursements of the action.

## SIXTH CAUSE OF ACTION
### Unpaid Wages and Overtime in Violation of the NYLL

99. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 98 with the same force as though separately alleged herein.

100. At all relevant times, Plaintiff was employed by the Defendant within the meaning of the NYLL.

101. Defendant willfully violated Plaintiff's rights by failing to pay him for all hours worked and failing to pay him overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek, in violation of NYLL and its applicable regulations.

102. Due to the Defendant's NYLL violations, Plaintiff is entitled to recover from the Defendant his unpaid regular compensation, overtime compensation, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of the action.

## Request for Relief

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first claim, actual damages to be determined at trial, but in no event less than $250,000;

B. For the second claim, actual damages to be determined at trial, but in no event less than $250,000;

C. For the third claim, actual damages to be determined at trial, but in no event less than $250,000;

D. For the fourth claim, actual damages to be determined at trial, but in no event less than $250,000;

E. For the fifth claim, damages to be determined at trial;

F. For the sixth claim, damages to be determined at trial; and

G. An award of compensatory, assumed, and punitive damages;

H. Pre-judgment and post-judgment interest;

I. Attorneys' fees and costs; and

J. For such other and further relief as the Court deems just and proper.

Dated: New York, New York
June 28, 2016

THE HARMAN FIRM, LLP

By: _____
Walker G. Harman, Jr. [WH-8044]
Edgar M. Rivera [ER-1378]
220 Fifth Avenue, Suite 900
New York, NY 10001
(212) 425-2600
wharman@theharmanfirm.com

*Attorneys for Plaintiff*